# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| WALTER E.,[1] | : | Case No. 3:20-cv-00517 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

## I.  INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits in August 2018. He subsequently filed an application for Supplemental Security Income in March 2019. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 15), Plaintiff's Reply (Doc. 17), and the administrative record (Doc. 9).

## II.     BACKGROUND

Plaintiff asserts that he has been under a disability since December 13, 2017. At that time, he was forty-eight years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Prior to the issuance of the ALJ's decision, Plaintiff changed age categories to a "person closely approaching advanced age." *See* 20 C.F. R. § 404.1563(d). Plaintiff has a "limited education." *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 9-2, PageID 49-65), Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 15), and Plaintiff's Reply (Doc. 17). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

3

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.   FACTS

### A.   The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1:     Plaintiff has not engaged in substantial gainful activity since December 13, 2017, the alleged onset date.

Step 2:     He has the severe impairments of traumatic amputation of the tip of the right thumb, anxiety, and depression.

Step 3:     He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of medium work as defined in 20 CFR

4

§ 404.1567(c), subject to the following limitations: "[H]e is limited to no feeling with the right thumb due to a partial amputation. He should avoid hazardous machinery and unprotected heights. Work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any, work place changes. [Plaintiff] is further limited to occasional interaction with the public and coworkers with no tandem tasks."

He is unable to perform any of his past relevant work.

Step 5:     Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. 9-2, PageID 52-65.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 65.)

## B.     Psychiatrist Molly Hall, M.D.

Dr. Hall completed a Mental Impairment Questionnaire in December 2019. (Doc. 9-10, PageID 928-930.) Dr. Hall indicated that she had been treating Plaintiff since December 2018. (*Id.* at PageID 928.) Dr. Hall opined that Plaintiff would be off task for twenty percent or more of the workday and absent from work more than three times per month. (*Id.*) Dr. Hall indicated mild to moderate impairment in several areas of work-related limitations identified on the form, but she opined that Plaintiff experienced marked impairment in the following abilities: identifying and solving problems; sequencing multi-step activities; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; adapting to changes; and making plans independently of others. (*Id.* at PageID 929.) Dr. Hall also found marked impairment in Plaintiff's overall abilities to focus attention on

5

work activities, stay on task at a sustained rate, and learn, recall, or use information to perform work activities. (*Id.* at PageID 930.) Dr. Hall further opined that Plaintiff experienced extreme impairment in the ability to sustain an ordinary routine and regular attendance at work, work a full day without needing more than the allotted number or length of rest periods during the day, manage psychologically based symptoms, and set realistic goals. (*Id.* at PageID 929.) Dr. Hall found extreme impairment in Plaintiff's overall ability to relate to and work with supervisors, coworkers, and the public. (*Id.*) She also found extreme impairment in Plaintiff's overall ability to regulate his emotions, control his behavior, and maintain well-being within a work setting. (*Id.* at PageID 930). According to Dr. Hall, Plaintiff was unable to perform regular, full-time competitive work on a sustained basis without missing work more than twice per month, being off task more than fifteen percent of the time, or needing additional breaks. (*Id.*)

The ALJ found that Dr. Hall's opinion was not persuasive. (Doc. 9-2, PageID 62.) The ALJ explained:

> Dr. Hall's opinion is generally inconsistent with her own treatment notes, which usually reflect significantly better functioning (e.g. Exhibits B6F, B9F, and B11F). Her notes reflect that he was generally cooperative with good eye contact (e.g. Exhibit B6F/6). While his mood was reportedly depressed with a dysphoric and mildly restricted affect, he usually presented with no suicidal ideation, homicidal ideation, delusions, or hallucinations (e.g. Exhibit B6F/6). Thought processes were logical and goal-directed (e.g. Exhibit B6F/6). Cognition was intact with good insight and judgment (e.g. Exhibit B6F/6). Dr. Hall's opinion is also not consistent with his therapy notes, which also reflect significantly better functioning than opined (e.g. Exhibits B6F, B9F, and B11F). For example, [Plaintiff] occasionally presented with depressed mood and had a casually unkempt appearance, but his mental status examination otherwise reflected adequate mental functioning (e.g. Exhibit B11F/5). His behavior was cooperative, and speech, eye contact, and motor activity were normal (e.g. Exhibit B11F/5). He

6

generally had no hallucinations, delusions, suicidal or homicidal ideation, or other abnormalities in perception or thought content (e.g. Exhibit B11F/5). Insight and judgment were generally at least fair, and he usually had normal attention and no impairment in orientation or memory (e.g. Exhibit B11F/5). He also performed relatively well on his psychological consultative examination, which occurred before he began receiving treatment (Exhibit B4F). Furthermore, he was able to apply for jobs, and his testimony indicated that the primary difficulty in obtaining work is difficulty with computers and transportation issues, which is not consistent with the excessive limitations suggested by Dr. Hall's opinion. Accordingly, Dr. Hall's opinion is not persuasive.

(*Id.* at PageID 62-63.)

### C. State Agency Consultative Physician and Medical Consultants

Aivars Vitols, D.O. performed a consultative physical examination in October 2018. (Doc. 9-7, PageID 451-54.) Dr. Vitols opined: "[Plaintiff's] overall physical functional capacity level is estimated to be in the moderate capacity range." (*Id.* at PageID 454.)

State agency medical consultant Linda Hall, M.D. completed a physical RFC assessment in November 2018. (Doc. 9-3, PageID 130-31.) Dr. Hall limited Plaintiff to medium work, subject to frequent climbing of ramps and stairs, stooping, and crawling. (*Id.*) Dr. Hall also opined Plaintiff could only occasionally climb ladders, ropes, and scaffolds. (*Id.* at PageID 131.) Maureen Gallagher, D.O. reviewed the updated record at the reconsideration level in February 2019. (*Id.* at PageID 148-49.) Dr. Gallagher affirmed Dr. Hall's assessment. (*Id.*)

The ALJ found that the opinions of Drs. Myers, Johnston, and Finnerty were "mostly persuasive." (Doc. 9-2, PageID 61-62.) The ALJ first summarized and evaluated the conclusions of Drs. Hall and Gallagher:

The opinions of Drs. Hall and Gallagher are mostly supported by and consistent with the record. [Plaintiff] alleged disability in part because of physical complaints; however, [Plaintiff's] physical functioning on examination was relatively normal with full strength and only slightly reduced range of motion in the lumbar spine (e.g. Exhibit B5F). He also reported that he was able to walk a mile or two at a time (e.g. Exhibit B4E/10). Thus, medium work addresses [Plaintiff's] physical complaints when giving [Plaintiff] the full benefit of the doubt. However, his limited complaints with minimal treatment throughout the record does not support the postural limitations in their opinions (Exhibits B1F-B11F). Additionally, the partial amputation of his thumb supports a feeling limitation for the remainder of the thumb as indicated by [Plaintiff's] subjective complaints, though Drs. Hall and Gallagher did not include such a limitation in their opinion. Thus, the opinions of Drs. Hall and Gallagher are mostly persuasive.

(*Id.* at PageID 61.)

The ALJ subsequently explained the persuasiveness he assigned to Dr. Vitols' opinion:

Dr. Vitols' opinion is supported by [Plaintiff's] relatively normal functioning on his examination, including the normal strength and only slightly restricted motion in the lumbar spine (Exhibit B5F). The opinion is also consistent with the limited complaints and minimal treatment for his pain throughout the record (Exhibits B1FB11F). However, I note that "moderate" is not a vocationally-defined exertion level. Therefore, Dr. Vitols' opinion is mostly persuasive.

(*Id.* at PageID 62.)

## D. State Agency Consultative Psychologist and Psychological Consultants

Katherine Myers, Psy.D. performed a consultative psychological evaluation on behalf of the State agency in October 2018. (Doc. 9-7, PageID 439-44.) Dr. Myers opined that Plaintiff "should be able to perform simple and repetitive tasks with no problems." (*Id.* at PageID 443.) Dr. Myers opined that for tasks requiring rapid timed performance, Plaintiff "may show work pace slightly slower than peers" but that he is "unlikely to

show a pattern of periods of time away from work for mental health reasons." (*Id.*) As for

interactions with others, Dr. Myers opined that Plaintiff's reports of ongoing irritability

"may negatively impair his relationships with others or may cause him to be easily

frustrated in job tasks." (*Id.*) Dr. Myers also opined that Plaintiff's overall stress tolerance

is "probably, at least mildly to moderately reduced." (*Id.* at PageID 444.)

State agency psychological consultant Irma Johnston, Psy.D. completed a mental

RFC assessment in October 2018. (Doc. 9-3, PageID 132-33.) Dr. Johnston opined that

Plaintiff was limited to low stress work, which she defined as "no job that involves fixed

production quotas, above average pressure for production, [and] work that is other than

routine in nature." (*Id.* at PageID 132.) She also opined that Plaintiff could carry out

simple, one- to three-step tasks. (*Id.*) According to Dr. Johnston, Plaintiff was limited to

superficial interactions with others, and changes in the work environment needed to be

"predictable and infrequent." (*Id.* at PageID 133.) Todd Finnerty, Psy.D. reviewed the

updated record at the reconsideration level in February 2019, and he affirmed Dr.

Johnston's assessment. (*Id.* at PageID 149-51.)

The ALJ found that the opinions of Drs. Myers, Johnston, and Finnerty were

"mostly persuasive." (Doc. 9-2, PageID 61-62.) The ALJ first evaluated the conclusions

of Drs. Johnston and Finnerty:

> The opinions of Drs. Irma Johnston and Todd Finnerty, non-examining
> psychologists with the DDD, are mostly persuasive . . . . The opinions of Drs.
> Johnston and Finnerty are generally supported by and consistent with the
> record (Exhibits B1F-B11F). The record reflects that [Plaintiff] has only been
> receiving regular mental health treatment for about a year, and his mental
> status examinations in those records reflect relatively normal mental
> functioning despite his subjective complaints (e.g. Exhibits B6F, B9F, and

B11F). For example, [Plaintiff] occasionally presented with depressed mood and had a casually unkempt appearance, but his mental status examination otherwise reflected adequate mental functioning (e.g. Exhibit B11F/5). His behavior was generally cooperative, and speech, eye contact, and motor activity were often normal (e.g. Exhibit B11F/5). He generally had no hallucinations, delusions, suicidal or homicidal ideation, or other abnormalities in perception or thought content (e.g. Exhibit B11F/5). Insight and judgment were usually at least fair, and he frequently had normal attention and no impairment in orientation or memory (e.g. Exhibit B11F/5). He also performed relatively well on his psychological consultative examination, which occurred before he began receiving treatment (Exhibit B4F). Furthermore, he was able to apply for jobs, and his testimony indicated that the primary difficulty in obtaining work is difficulty with computers and transportation issues. As such, the opinions of Drs. Johnsotn [sic] and Finnerty are supported by and consistent with the record. However, I note that some of the language used in the opinions of Drs. Johsnton [sic] and Finnerty, including "low stress" and "superficial" contact, are vague and not vocationally defined. Accordingly, the opinions of Drs. Johnston and Finnerty are somewhat persuasive.

(*Id.*)

The ALJ subsequently summarized and explained the persuasiveness of Dr.

Myers' opinion:

The opinion of Dr. Katherine A. Myers, the psychological consultative examiner, is mostly persuasive . . . . The opinion of Dr. Myers is generally supported by [Plaintiff's] performance on his mental status examination and response to interview questions (Exhibit B4F). His records also demonstrate relatively normal functioning on the mental status examinations in his treatment records (e.g. Exhibits B6F, B9F, and B11F). For example, insight and judgment were generally at least fair, and he usually had normal attention and no impairment in orientation or memory, which supports Dr. Myers' opinion (e.g. Exhibit B11F/5). However, I found [Plaintiff] slightly more limited when giving him the full benefit of the doubt with respect to his subjective allegations. Thus, Dr. Myers' opinion is mostly persuasive.

(*Id.* at PageID 62.)

## V.      LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred "in evaluating the medical source opinions and by improperly acting as his own medical expert." (Doc. 12, PageID 967.) Plaintiff specifically challenges the ALJ's analysis of treating psychiatrist Molly Hall, M.D., consultative psychologist Katherine Myers, Psy.D., and State agency psychological consultants Irma Johnston, Psy.D. and Todd Finnerty, Psy.D. (*Id.* at PageID 972.) The Court finds that the ALJ's conclusions are supported by substantial evidence and that the Plaintiff's arguments are not well-taken.

### A.      Applicable Law

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. Because Plaintiff filed his claims in August 2018 and March 2019, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors–supportability and consistency–are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). As to the first factor (supportability), "[t]he more

11

relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) and prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ "may, but [is] not required to" explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, when the ALJ finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must articulate how he considered the "other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).

### B. Psychiatrist Molly Hall, M.D.

The ALJ complied with the applicable regulations when he found Dr. Hall's opinion not persuasive. The ALJ's findings are also supported by substantial evidence.

The ALJ addressed the supportability of Dr. Hall's opinion as required by 20 C.F.R. § 404.1520c(b)(2) and (c)(1). The ALJ explained that Dr. Hall's opinion was

unsupported by her own treatment notes.[3] (Doc. 9-2, PageID 62.) The ALJ acknowledged that Dr. Hall's notes documented Plaintiff's reports of a depressed mood, as well as a dysphoric and mildly restricted affect. (*Id.*) He noted that Plaintiff "usually presented with no suicidal ideation, homicidal ideation, delusions, or hallucinations." (*Id.*) The ALJ also cited many of the normal findings that Dr. Hall documented, which included cooperative behavior, good eye contact, logical and goal-directed thought processes, intact cognition, and good insight and judgment. (*Id.*)

The ALJ also addressed the consistency of Dr. Hall's opinion as required by 20 C.F.R. § 404.1520c(b)(2) and (c)(2). The ALJ concluded that Dr. Hall's opinion was inconsistent with Plaintiff's therapy notes. (Doc. 9-2, PageID 62.) The ALJ acknowledged that Plaintiff's therapist occasionally observed that Plaintiff presented with a depressed mood and casually unkempt appearance and that Plaintiff "generally" reported no hallucinations, delusions, suicidal or homicidal ideation, or other perceptual abnormalities. (*Id.*) The ALJ reasoned that the therapy notes "generally" showed at least fair insight and judgment and that Plaintiff "usually" exhibited normal attention and no impairment in orientation or memory. (*Id.*) The ALJ also cited to other mental status examination findings that were otherwise relatively normal and included cooperative behavior, normal speech and eye contact, and normal motor activity. (*Id.*) The ALJ explained that Dr. Hall's opinion was inconsistent with the findings from the consultative

---

[3] The ALJ stated: "Dr. Hall's opinion is generally ***inconsistent*** with her own treatment notes . . . ." (Doc. 9-2, PageID 62.) But the supportability factor is limited to consideration of the "objective medical evidence and supporting explanations ***presented by a medical source*** . . . ." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). So although the ALJ used the term "inconsistent," his comparison of Dr. Hall's opinion to her own treatment notes actually addressed the supportability factor.

13

psychological evaluation, which the ALJ summarized when discussing the medical evidence. (*Id.* at PageID 57-58, 62.) Because the ALJ's conclusions are supported by substantial evidence and comply with the regulations, the Court cannot reverse them.

Plaintiff argues that the ALJ relied too heavily on objective evidence when he discounted Dr. Hall's opinion: "[The ALJ] failed to consider that the Sixth Circuit has stressed that psychiatric impairments are not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . ." (Doc. 12, PageID 979, citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989).) The Sixth Circuit made this statement when reviewing an ALJ's decision to discount the findings of an examining psychiatrist who opined about the claimant's mental limitations but was unwilling to confirm the diagnosis or opine about its causation after just one interview. *Blankenship*, 874 F.2d at 1121. The Sixth Circuit noted that objective evidence supporting mental disability claims may consist of "the diagnosis and observations of professionals trained in the field of psychopathology." *Id*. (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)). The Sixth Circuit stated that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." *Id*. (quoting *Poulin*). The Sixth Circuit held that the examining psychiatrist's "unwillingness to draw those conclusions [i.e., regarding diagnosis and causation] is not a justification for discounting the assessments [he] was able to make." *Id*. at 1122. Therefore, the Sixth Circuit reversed the ALJ's decision to discount the examining psychiatrist's opinion. *Id*.

14

*Blankenship* does not support the Plaintiff's position. The ALJ did not reject Dr. Hall's report "because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation." *Blankenship*, 874 F.2d at 1121. Instead, the ALJ discounted Dr. Hall's opinion because it was neither supportable by nor consistent with the medical evidence. Specifically, the ALJ reasoned that Dr. Hall's opinion was unsupported by her own treatment notes and inconsistent with other evidence, including Plaintiff's therapy notes, the consultative evaluation report, and Plaintiff's reported activities. (Doc. 9-2, PageID 62-63.) The ALJ's decision to discount Dr. Hall's opinion is further supported by the three opinions in the record that contradict Dr. Hall's opinion: namely, the opinions of the State agency psychological consultants and the consultative psychologist. (*See* Doc. 9-3, PageID 132-33, 149-51; Doc. 9-7, PageID 439-44.)

It was also proper for the ALJ to consider the mental status findings in the record, which are objective medical evidence, when analyzing Dr. Hall's opinion. 20 C.F.R. § 404.1520c(c)(1) (explaining the supportability factor by stating that "[t]he more relevant the ***objective medical evidence*** and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." (emphasis added)). Indeed, the *Blankenship* court recognized that "[w]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." 874 F.2d at 1121 (quoting *Poulin*, 817 F.3d at 873-74.)

By asserting that the ALJ relied too heavily on the objective findings in the record, Plaintiff essentially argues that the ALJ should have given more weight to Plaintiff's

15

subjective complaints when analyzing Dr. Hall's opinion. But the ALJ properly followed the Social Security Administration's two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304 (October 25, 2017). First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* at *3. Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which the individual's symptoms limit her ability to perform work-related activities. *Id.* at *4. The ALJ must examine "the entire case record, including the ***objective medical evidence***; the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record." *Id.* at *4-5 (emphasis added). Although the ALJ should not rely solely on objective medical evidence to discount subjective complaints, the ALJ should consider objective evidence because it "is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms." *Id*. at *5.

In this case, the ALJ followed the required steps. The ALJ first determined that Plaintiff has medically determinable impairments (i.e., traumatic amputation of the tip of the right thumb, anxiety, and depression) that could reasonably cause the type of symptomatology alleged. (Doc. 9-2, PageID 52, 57.) Next, the ALJ considered the evidence in the record and concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 57.) In making this

16

conclusion, the ALJ appropriately considered the objective medical and other evidence when evaluating the intensity and persistence of Plaintiff's symptoms.

Specifically, the ALJ summarized Plaintiff's allegations and subjective complaints regarding his depression and anxiety. (Doc. 9-2, PageID 56-57.) The ALJ provided a detailed summary of Plaintiff's medical records and treatment history for his mental complaints. (*Id.* at PageID 57-60.) The ALJ acknowledged Plaintiff's subjective complaints and abnormal examination findings, including many of those identified in Plaintiff's brief. (*Id.*) The ALJ weighed these abnormal findings against other normal findings in the record. (*Id.*) The ALJ also considered Plaintiff's reported activities and balanced Plaintiff's reported difficulties against Plaintiff's statements throughout the record of what he was able to do. (*Id.* at PageID 60.) The ALJ concluded that the balance of the evidence of record did not support Plaintiff's allegations of symptom severity. (*Id.* at PageID 57-60.) The Court finds the ALJ complied with SSR 16-3p when evaluating Plaintiff's symptom severity and his conclusions are supported by substantial evidence.

### C.     State Agency Reviewing Consultants and Consultative Examiners

Plaintiff asserts that because the ALJ found that all the opinions and findings from the State agency reviewing and examining consultants to be equally persuasive, the ALJ was required to "articulate and explain the factors that led to the conclusion of equality." (Doc. 12, PageID 971.) Plaintiff contends that the ALJ did not properly articulate these factors. (*Id.*, citing 20 C.F.R. § 404.1520c(b)(3).) The Court concludes that the "equally persuasive" directive in 20 C.F.R. § 404.1520c(b)(3) does not apply in this case.

17

The "equally persuasive" directive applies when an ALJ finds that "two or more medical opinions or prior administrative medical findings ***about the same issue*** are both equally well-supported . . . and consistent with the record." 20 C.F.R. § 404.1520c(b)(3) (emphasis added). The State agency medical consultants and consultative physician opined about the Plaintiff's physical functioning. (Doc. 9-3, PageID 130-31, 148-49; Doc. 9-7, PageID 454.) The State agency psychological consultants and consultative psychologist opined about a different issue: namely, Plaintiff's mental functioning. (Doc. 9-3, PageID 132-33, 149-51; Doc. 9-7, PageID 443-44.) The Court will analyze these two groups of opinions separately.

The "equally persuasive" directive does not apply to the State agency opinions about Plaintiff's physical functioning. This directive requires the ALJ to address additional factors if he finds that two or more medical opinions or prior administrative findings about the same issue "are ***both*** equally well-supported (paragraph (c)(1) of this section) ***and*** consistent with the record (paragraph (c)(2) of this section)." 20 C.F.R. § 404.1520c(b)(3). Although the ALJ found all of the opinions "mostly persuasive," he did not find them "both equally well-supported and consistent with the record." *Id*.

For example, in his discussion of the State agency medical consultants' findings, the ALJ reasoned that Plaintiff's limited complaints and treatment did not support[4] the

---

[4] As discussed above, the supportability factor is limited to consideration of the "objective medical evidence and supporting explanations ***presented by a medical source*** . . . ." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). By contrast, "consistency" involves comparing a medical opinion or prior administrative medical finding with "***the evidence from other medical sources and nonmedical sources*** in the claim." 20 C.F.R. § 416.920c(c)(2) (emphasis added). So although the ALJ used the term "support," his comparison of the State agency medical consultants' findings to other evidence in the record actually addressed the consistency factor.

postural limitations suggested by these consultants. (Doc. 9-2, PageID 61.) The ALJ also explained that Plaintiff's thumb condition warranted an additional limitation for feeling that the consultants had not suggested. (*Id.*) Accordingly, while the ALJ found the consultants' findings overall "mostly persuasive," he also found their conclusions to be less than fully consistent with other evidence. *See* 20 C.F.R. § 404.1520c(c)(2).

Conversely, although the ALJ found consultative physician Dr. Vitols' opinion "mostly persuasive," the ALJ observed that "'moderate' is not a vocationally-defined exertion level." (Doc. 9-2, PageID 62.) Accordingly, despite finding that Dr. Vitols' opinion was "mostly persuasive," the ALJ found that the opinion was less supported by Dr. Vitols' proffered explanation. *See* 20 C.F.R. § 404.1520c(c)(1).

In sum, the ALJ found that the consultants' findings were less than fully consistent with the record, and that Dr. Vitols' opinion was less than fully supported by the record. The ALJ therefore did not find that these opinions "both equally well-supported . . . and consistent with the record." As a result, 20 C.F.R. § 404.1520c(b)(3) did not apply, and the ALJ was not required to explain his consideration of the additional factors.

The ALJ similarly concluded that the opinions of the State agency psychological consultants were not fully supported by their proffered explanations: "[S]ome of the language used in the opinions of Drs. Johsnton [sic] and Finnerty, including "low stress" and "superficial" contact, are vague and not vocationally defined." (Doc. 9-2, PageID 62.) *See* 20 C.F.R. § 404.1520c(c)(1). By contrast, although the ALJ found consultative psychologist Dr. Myers' opinion "mostly persuasive," the ALJ explained that he "found [Plaintiff] slightly more limited when giving him the full benefit of the doubt with respect

to his subjective allegations." (*Id.*) The ALJ therefore found Dr. Myers' opinion less than fully consistent with other evidence. *See* 20 C.F.R. § 404.1520c(c)(2).

Thus, despite finding all these opinions to be "mostly persuasive," the ALJ found that the consultants' findings were less than fully supported and that Dr. Myers' opinion was less than fully consistent with other evidence. Since the ALJ did not find that these opinions are "both equally well-supported . . . and consistent with the record," 20 C.F.R. § 404.1520c(b)(3) does not apply and the ALJ was not required to articulate how he considered the additional factors.

The Court also finds that the ALJ complied with applicable regulations when he found that the opinions of the State agency medical consultants, consultative physician, psychological consultants, and consultative psychologist were "mostly persuasive." Doc. 9-2, PageID 61-62.) Specifically, the ALJ addressed the supportability and consistency of each opinion, and he cited to specific evidence to support his conclusions. (*Id.*) The Court further finds that substantial evidence supports the ALJ's findings.

Plaintiff argues that the ALJ erroneously relied on the opinions of the State agency psychological consultants and consultative psychologist because "[n]one of the evaluators ever reviewed Dr. Hall's records or her treating source opinion." (Doc. 12, PageID 973.) This argument is not well-taken. As an initial matter, Dr. Finnerty indicated that he did, in fact, review some records from Dr. Hall. (Doc. 9-3, PageID 144, 151.) More importantly, nothing in the regulations requires a State agency expert to review all of the evidence later considered by an ALJ to provide a valid opinion. To the contrary, an ALJ may rely on a state agency physician's opinion that is not based on all of the medical

20

evidence in the record, so long as the ALJ considers the evidence that the reviewing physician did not consider. *Glasgow v. Comm'r of Soc. Sec.*, 690 Fed. App'x 385, 387 (6th Cir. 2017); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009). The ALJ appropriately did so here.

Finally, Plaintiff argues that the ALJ wrongly "relied solely on incomplete medical expert opinions and then interpreted the rest of the medical data on his own." (Doc. 12, PageID 973.) But "the ALJ is charged with the responsibility of evaluating the medical evidence" when determining a claimant's RFC. *Webb v. Comm'r of Soc. Se*c., 368 F.3d 629, 633 (6th Cir. 2004); *see, e.g.,* 20 C.F.R. § 404.1545(a)(3). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x. 435, 439 (6th Cir. 2010). Therefore, this argument is also not well-taken.

In sum, the Court finds that the ALJ properly evaluated the opinions of Dr. Hall and the State agency consultants and consultative examiners, and that his findings are supported by substantial evidence.

## VI.    CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework and substantial evidence supports his findings and conclusions. Although Plaintiff contends the ALJ should have weighed the opinion evidence differently, the ALJ provided reasonable explanations, supported by substantial evidence and in compliance with applicable regulations, for his findings and conclusions regarding the persuasiveness of the opinions of Dr. Hall and the State agency consultative and reviewing consultants.

The ALJ also properly evaluated Plaintiff's symptom severity pursuant to the applicable regulations, including Social Security Ruling 16-3p. The ALJ's factual findings are supported by substantial evidence and his analysis complies with the applicable regulations. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (Doc. 12) is OVERRULED;

2.    The Court AFFIRMS the Commissioner's non-disability determination; and

3.    The case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge